UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CAROL A. CARTER,

          Plaintiff,                  CIVIL ACTION NO. 07-13772

        v.                        DISTRICT JUDGE PAUL V. GADOLA

GRAYLING CARTER,           MAGISTRATE JUDGE VIRGINIA MORGAN
CENTEX HOME EQUITY
COMPANY LLC, AMERICAN
PIONEER TITLE INSURANCE
COMPANY, GENERAL AMERICAN
CORPORATION, NATIONSTAR
MORTGAGE LLC, BRIAN YOHO,
TROTT & TROTT PC, ARI M. CHARLIP
and PAUL SMIGIELSKI,

          Defendants
_____/

## REPORT AND RECOMMENDATION

## I. Introduction

      This matter comes before the court on Defendants Yoho and Trott & Trott, PC ("Trott &

Trott")'s Motion to Dismiss (D/E #14), Defendant American Pioneer Title Insurance Company

(" American Pioneer")'s Motion to Dismiss (D/E #28), Defendant Smigielski's Motion to

Dismiss (D/E #34) and Defendants Charlip, Centex Home Equity Company LLC ("Centex") and

Nationstar Mortgage LLC ("Nationstar")'s Motion to Dismiss and/or for Summary Judgment

(D/E #36).

For the reasons stated below, this court recommends that the motions to dismiss filed by American Pioneer and Smigielski be **GRANTED**. Smigielski should be dismissed from this action pursuant to Fed. R. Civ. P. 12(b)(5) because of a lack of proper service. Plaintiff has failed to state a claim upon which relief can be granted against American Pioneer. This Court also recommends that the motions to dismiss and/or for summary judgment filed by Centex, Nationstar and Charlip, as well as the motion to dismiss filed by Yoho and Trott & Trott, be **GRANTED IN PART**.

Specifically. with respect to Count I of plaintiff's complaint, plaintiff's conspiracy claim against Centex should be allowed to proceed while her negligence claim against American Pioneer should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff failed to state a claim upon which relief can be granted.

With respect to Count II of plaintiff's complaint, plaintiff's fraud claims against Centex, Nationstar, Charlip, Smigielski and American Pioneer should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff failed to allege her claims of fraud with specificity as required by Fed. R. Civ. P. 9(b).

With respect to Count III of plaintiff's complaint, plaintiff's extortion claims against Centex, Nationstar, Charlip, Yoho and Trott & Trott should be allowed to proceed. If the court does not dismiss Smigielski from this action for lack of service, the extortion claim against him should also be allowed to proceed.

With respect to Count IV of plaintiff's complaint, plaintiff's embezzlement claim against Centex should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff does not have a private cause of action.

With respect to Count V of plaintiff's complaint, plaintiff's claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, against Centex, Nationstar, Yoho and Trott & Trott should be allowed to proceed.

With respect to Count VI of plaintiff's complaint, plaintiff's mail fraud claims against Centex, Nationstar, Charlip and Smigielski should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff does not have a private cause of action.

With respect to Count VII of plaintiff's complaint, plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, should be dismissed *sua sponte* because plaintiff failed to allege the existence of any enterprise, as required by that statute.

With respect to Count VIII of plaintiff's complaint, plaintiff's quiet title action against Centex and Nationstar should be dismissed as it is moot.

Given the above recommendations, plaintiff should only be allowed to proceed with her conspiracy claim against Centex, her extortion claims against Centex, Nationstar, Charlip, Yoho, and Trott & Trott, and her claims under the FDCPA against Centex, Nationstar, Yoho and Trott & Trott.  All other claims against those defendants should be dismissed.  American Pioneer and Smigielski should be dismissed from this action all together.

Defendants Grayling Carter ("Grayling") and General American Corporation ("General American") are not part of any of the above motions and the claims against them also remain. However, on February 21. 2008, this Court issued an order to plaintiff to show cause why this Court should not enter a report recommending the dismissal of defendant Grayling[1] for failure to effect timely service of process (D/E #22). For the reasons noted below, this Court finds plaintiff's response to the order to show cause inadequate and recommends that defendant Grayling also be dismissed from this action without prejudice.

## II. Background

### A. Complaint

On September 7, 2007, plaintiff filed a complaint against defendants in this matter (D/E #1). In that complaint, plaintiff alleges that, on November 26, 2001, defendant Grayling, plaintiff's husband at that time, entered into a mortgage with defendant Centex for the original amount of $31,441.69, despite the fact that plaintiff and Grayling owned their property jointly. (Complaint, ¶¶ 2, 7) Defendant American Pioneer acted as the title insurance company involved and defendant General American Corporation was the closing agent. (Complaint, ¶ 2) Defendants Yoho and Trott & Trott were the attorneys for Centex. (Complaint, ¶ 2) Centex did not record the mortgage at the Wayne County register of deeds (Complaint, ¶ 13), though, at some point, Centex paid off the debt with the title insurance proceeds. (Complaint, ¶¶ 2, 18) In June of 2004, plaintiff divorced Grayling and it was ordered that each should pay the balance of

_____

[1]Defendants General American and Smigielski were also part of that order to show cause, but General American was timely served (D/E #15) and has filed an answer (D/E #26), and the failure to timely serve Smigielski is discussed below as part of his motion to dismiss.

his or her debts and that plaintiff be awarded the marital home.  (Complaint, ¶ 19)  Grayling

conveyed a quit claim deed for his interest in the property to plaintiff.  (Complaint, ¶ 19)  On

March 13, 2007, defendant Nationstar filed a complaint against plaintiff and Grayling in

Michigan state court.  (Exhibit IX to Plaintiff's Complaint)  In that complaint, Nationstar

asserted that Centex's mortgage had been assigned to it.  The action was to quiet title,

declaratory relief, and foreclosure of mortgage.  Defendants Charlip and Smigielski acted as the

attorneys for defendant Nationstar in that state action.[2]  (Complaint, ¶ 2)

While plaintiff's complaint does not number them, it appears to contain eight counts.  In

Count I (Conspiracy), plaintiff alleges that General American, as a closing agent, conspired with

Grayling to obtain a loan from defendant Centex despite the fact that Grayling had not provided

any documentation deeming him the sole owner of the property in question.  (Complaint, ¶ 6)

Plaintiff also alleges that American Pioneer harmed plaintiff "by not performing due diligence in

their title search and conspiring with defendants Centex and [Grayling] to issue title insurance on

Plaintiff's property irrespective of the fact that there was clearly a cloud on the title."

(Complaint, ¶ 12)

---

[2]Subsequent to the filing of this action, plaintiff was granted summary disposition in the
Michigan state case on the basis that Nationstar had acknowledged that it had no claim against
plaintiff.  The state case was dismissed with prejudice as to plaintiff and the court ordered that
the Lis Pendens filed by Nationstar be released and forever discharged.  (Order Granting Carol
Ann Carter's Motion for Summary Disposition, dated February 22, 2008, attached as Exhibit 6 to
D/E #36).  The Lis Pendens has been released (Release of Claim of Interest, attached as Exhibit
7 to D/E #36; Release of Notice of Lis Pendens, attached as Exhibit 8 to D/E #36).

In Count II (Fraud), plaintiff alleges that Grayling, Centex, American Pioneer and General American conspired to commit fraud "when a loan on a property that clearly had a defective title was issued, coupled with the fact that they could not and had no intention of recording the mortgage with the Wayne County Register of Deeds due to such fraud." (Complaint, ¶ 16)  Plaintiff also alleges in Count II that Centex, Nationstar, Charlip and Smigielski "attempted to provide misleading and deceptive documents to harass plaintiff by attaching to the complaint filed in Third Circuit Court a copy of the mortgage with the Liber Number printed on it to make it appear as if the document had been filed with the register of deeds."  (Complaint, ¶ 20)

In Count III (Extortion), plaintiff alleges that Nationstar, Centex, Yoho, Trott & Trott, Charlip and Smigielski "conspired to extort money from Plaintiff by filing false, fraudulent, and misleading documents in an attempt to force Plaintiff to pay for a debt secured by an invalid mortgage or to lose her home, when in fact the debt had been paid."  (Complaint, ¶ 22)

In Count IV (Embezzlement), plaintiff alleges that "Defendant Centex has embezzled money received from the title insurance policy issued by [American Pioneer] by failing to make a ledger entry indicating the debt was extinguished."  (Complaint, ¶ 25)  In support of that embezzlement claim, plaintiff cited to 18 U.S.C. § 1005.  (Complaint, ¶ 25)

In Count V (Fair Debt Collection Practices), plaintiff alleges that defendants Nationstar, Centex, Yoho, and Trott & Trott "have violated The Fair Debt Collection Practice (sic) by presenting false or misleading representations as to the validity of the debt when they conspired to file a fictitious Claim of Interest recorded at the Wayne County Register of Deeds."

(Complaint, ¶ 27)  Plaintiff also alleges that "the Claim of Interest was recorded exclusively for the benefit of embezzling and extorting additional monies from Plaintiff with full knowledge that not only was the mortgage invalid but that the invalid mortgage between Defendants [Grayling] and Centex had been satisfied through the title insurance policy proceeds."  (Complaint, ¶ 33)

In Count VI (Mail Fraud, Fraud and Swindles), plaintiff alleges that Centex, Nationstar, Charlip and Smigielski "have attempted to fraud and swindle Plaintiff by filing a frivolous, deceptive and false complaint with the court."  (Complaint, ¶ 38)  In support of that claim, plaintiff cites to 18 U.S.C. §§ 1341, 1346.  Plaintiff also alleges that Centex, Nationstar, Charlip and Smigielski have "via the United States Postal Service, sent a false, misleading deceptive document for the sole purpose of devising a scheme which would deprive Plaintiff, through a fictitious claim against her, of her right to live in the martial property that she was awarded in her divorce judgment from Defendant [Grayling]."  (Complaint, ¶ 39)  In support of that claim, plaintiff cites to 18 U.S.C. §§ 1341, 1349.

In Count VII (RICO), plaintiff alleges that "Defendants Centex, Nationstar, Yoho, Trott & Trott, Charlip, Smigielski have violated the RICO laws and have participated in racketeering by receiving income directly or indirectly through collection of an unlawful debt."  (Complaint, ¶ 43)

In Count VIII (Quiet Title), plaintiff alleges that defendant Centex does not have a valid lien against the property, defendant Nationstar is not the assignee of defendant Centex, there is no longer a debt, plaintiff was awarded the property in her divorce, and plaintiff's son, who has

an interest in the property, has no objection to plaintiff receiving quiet title. (Complaint, ¶¶ 48-53)

As relief, plaintiff seeks damages for her pain and suffering, statutory damages, and punitive damages. (Complaint, pp. 10-12)

**B. Motions before the Court**

**1. Defendants Yoho and Trott & Trott's Motion to Dismiss (D/E #14)**

On December 28, 2007, defendants Yoho and Trott & Trott filed a motion to dismiss (D/E #14). In that motion, defendants argue that the federal courts have no jurisdiction over this matter because plaintiff's claims are so clearly frivolous. Defendants also argue that, even if the court did have jurisdiction, the court should abstain from exercising it because this matter is already being litigated in state court. Defendants further argue that plaintiff has failed to state a claim upon which relief can be granted with respect to the only two federal claims found in her complaint: her claim regarding the FDCPA and the RICO count. According to defendants, plaintiff has failed to state a claim under the FDCPA because no monies were demanded of her and she has failed to state a RICO claim because she did not describe any underlying illegal activity of predicate acts.

On March 10, 2008, plaintiff filed a response to defendants Yoho and Trott & Trott's motion to dismiss (D/E #30). In that response, plaintiff argues that the federal courts have subject matter jurisdiction because the allegations set forth in plaintiff's complaint are completely separate from the issues defendants brought forth in the state case. With respect to plaintiff's specific claims, she argues that her complaint speaks for itself.

**2. Defendant American Pioneer's Motion to Dismiss and/or for Summary Judgment (D/E #28)**

On March 12, 2008, defendant American Pioneer filed a motion to dismiss and/or for summary judgment (D/E #28, #29). In that motion, American Pioneer notes that six of plaintiff's counts contain no claims against it. Regarding the two counts involving it, American Pioneer argues that plaintiff's conspiracy claim must be dismissed because American Pioneer had no duty to plaintiff to conduct a title search and that plaintiff's fraud claim must be dismissed because plaintiff failed to plead it with specificity.

On April 9, 2008, plaintiff filed a response to American Pioneer's motion (D/E #39). In that response, plaintiff argues that all the defendants are accountable for what happened to her because they all knew what was going on. Plaintiff also argues that her allegations are clear.

**3. Defendant Smigielski's Motion to Dismiss (D/E #34)**

On March 21, 2008, defendant Smigielski filed a motion to dismiss (D/E #34). In that motion, Smigielski argues that this court should abstain from deciding this matter because there is a state law proceeding deciding the same state law issues. Smigielski also argues that he was not properly served and that a number of plaintiff's counts do not mention him. Smigielski further argues that plaintiff's fraud and mail fraud claims must be dismissed because they were not plead with specificity, and that plaintiff's Extortion, RICO and FDCPA claims must be dismissed because Smigielski never sought money from plaintiff and he never threatened her. According to Smigielski, plaintiff's RICO claim must also be dismissed because she fails to describe any underlying illegal activity.

On April 21, 2008, plaintiff filed a response to Smigielski's motion to dismiss (D/E #41). In that response, plaintiff argues that the state case defendant cites to has been completed with respect to plaintiff. Plaintiff also argues that Smigielski was served within 120 days of the issuance of the summons. Plaintiff further argues that, when Smigielski prepared the state court complaint while knowing that his client did not have possession of the note, he became guilty of conspiracy, fraud, and the other counts.

### 4. Defendants Charlip, Centex and Nationstar's Motion to Dismiss and/or for Summary Judgment (D/E #36)

On March 28, 2008, defendants Charlip, Centex and Nationstar filed a motion to dismiss and/or for summary judgment (D/E #36). In that motion, defendants argue that plaintiff's quiet title claim has been fully litigated in state court and is therefore barred under the doctrine of res judicata. Defendants further argue that plaintiff's claims are so legally deficient that no factual development could justify any right of recovery against the defendants, and that there is no evidence of a conspiracy or fraud. Defendants also argue the state court action was not a collection action, so the FDCPA does not apply and, moreover, to the extent defendants sent letters to plaintiff, they complied with the act. Moreover, according to defendants, plaintiff also cites to criminal statues that do not provide for a private cause of action.

On April 24, 2008, plaintiff filed a response to defendants Charlip, Centex and Nationstar's motion to dismiss and/or for summary judgment (D/E #43). In that response, plaintiff argues that defendants brief is insufficient because it is not supported by any affidavits.

### III. Standards of Review

#### A. Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. Pro. 12(b)(1) provides that an action may be dismissed for "lack of subject-matter jurisdiction." A complaint may be dismissed "for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir.1999). A complaint was frivolous because it lacked an arguable basis in law or fact. See Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

#### B. Fed. R. Civ. P. 12(b)(5)

Smigielski also moves for dismissal pursuant to Fed. R. Civ. Pro. 12(b)(5). Pursuant to Fed. R. Civ. Pro. 12(b)(5), an action is dismissed for "insufficient service of process." A plaintiff is responsible for serving the summons and complaint within the applicable time period. Fed. R. Civ. P. 4(c)(1).[3] Without such personal service, a district court is without jurisdiction to render judgment against a defendant. Friedman v. Estate of Presser, 929 F.2d 1151, 1156 (6th Cir.1991). The time limit for service of process is 120 days after the filing of the complaint. Fed. R. Civ. P. 4(m). "Absent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal." Byrd v. Stone, 94 F.3d 217, 219 (6th Cir.1996), citing Habib v. Gen. Motors Corp., 15 F.3d 72, 73 (6th Cir.1994).

---

[3]For plaintiffs proceeding *in forma pauperis* pursuant to 28 U.S.C. §1915(d), such as plaintiff (D/E #3), the officers of the court, e.g., U. S. Marshals, shall serve process.

**C. Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a claim for "failure to state a claim upon which relief can be granted." The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. <u>Bell Atl. Corp. v. Twombly</u>, __ U.S. __, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). <u>See also</u> <u>Association of Cleveland Fire Fighters v. City of Cleveland, Ohio</u>, 502 F.3d 545, 548 (6th Cir. 2007). In <u>Twombly</u>, the Supreme Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S.Ct. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." <u>Twombly</u>, 127 S.Ct. at 1964-65 (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." <u>Twombly</u>, 127 S.Ct. at 1969.

**D. Fed. R. Civ. P. 56**

Federal Rule of Civil Procedure 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Abstention

As a preliminary matter, Yoho, Trott & Trott, and Smigielski all argue that the court should abstain from hearing this matter because of the state action involving plaintiff and some of the defendants in this case. However, as noted above, the state action referred to by defendants has been completed with respect to plaintiff (Order Granting Carol Ann Carter's Motion for Summary Disposition, dated February 22, 2008, attached as Exhibit 6 to D/E #36) and, therefore, this argument is moot.[4]

---

[4]In connection with their abstention arguments, defendants' briefs also state that plaintiff is procedurally barred from bringing her claims in federal court because they could have been raised in state court. However, defendants completely fail to support that statement with any law or case cites. Nor do defendants even discuss the statement further. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir.1997) (citations omitted). <u>See</u> <u>also</u> <u>Moore v. LaFayette Life Ins. Co.</u>, 458 F.3d 416, 448 (6th Cir. 2006) (holding that plaintiff's perfunctory argument and failure to elucidate relevant case law amounted to a waiver of the argument on appeal); <u>Weinstein v. Schwartz</u>, 422 F.3d 476, 477 n. 1 (7th Cir. 2005) (finding that a party's failure to properly develop an argument with citation to relevant legal authority constituted a waiver of that argument); <u>Jones v. U.S.</u>, No. 04-40238, 2007 WL 2852339, 20 (E.D. Mich. September 28, 2007) (Gadola, J.) (finding that the petitioner's failure to offer any evidence on the issue of expectation of privacy waived that argument); <u>Brown v. U.S.</u>, No. 06-14087, 2007 WL 2156283, 2 (E.D. Mich. July 25, 2007) (Gadola, J.) (finding that the petitioner's failure to explain basis for ineffective assistance of counsel argument meant that the argument was waived); <u>Randle v. U.S.</u>, No. 05-40028, 2007 WL 313289, 5 (E.D. Mich. January 31, 2007) (Gadola, J.) (finding the petitioner superficial argument regarding ineffective assistance of counsel waived). Pursuant to those cases, defendants' argument that plaintiff's claims are procedurally barred should be deemed waived.

Moreover, in making their abstention argument, defendants relied solely on Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971). Under Younger abstention, absent unusual circumstances not asserted here, a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved. Younger, 401 U.S. at 40; Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); Squire v. Coughlan, 469 F.3d 551, 555 (6th Cir. 2006); Sun Refining & Mktg. Co. v. Brennan, 921 F.2d 635, 638-42 (6th Cir. 1990). "Younger abstention is not a question of jurisdiction, but is rather based on strong policies counseling against the exercise of such jurisdiction." O'Neill v. Coughlan, 511 F.3d 638, 641 (6th Cir. 2008) (citations omitted). Younger abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. Younger, 401 U.S. at 40-41, 91 S.Ct. 746. The Sixth Circuit looks to three factors to determine whether a court should abstain from hearing a case under the Younger doctrine: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." O'Neill, 511 F.3d at 643 (citations omitted).

In this case, while defendants cited to Younger and the existence of the state court action involving plaintiff and some of the defendants, there was no discussion of the factors used to determine whether a court should abstain from hearing a case pursuant to the Younger doctrine. Thus, even if defendants' argument was not moot, there is nothing suggesting that the Younger doctrine applies to this case.

-15-

**B. Service**

Defendant Smigielski also argues that the claims against him must be dismissed because he has not been properly served in this matter. Fed. R. Civ. P. 4(c)(1) provides that: "A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Pursuant to Fed. R. Civ. P. 4(m), a defendant must be served within 120 days after the complaint is filed. If the defendant is not served within that time the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

In this case, plaintiff filed her complaint on September 7, 2007 (D/E #1), but plaintiff concedes that Smigielski was not served until March 1, 2008, more than 120 days later. Given that timeline, Smigielski was not properly served.. As noted above, a complaint should only be dismissed for insufficient service of process absent a showing of good cause to justify a failure to effect timely service. Byrd, 94 F.3d at 219. In this case, plaintiff argues, without support, that Smigielski was properly served because he was served within 120 days of the issuance of the summons. However, as noted above, Fed. R. Civ. P. 4(c)(1) provides that the plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m), i.e. within 120 days of the complaint being filed. Fed. R. Civ. P. 4(c)(1); Fed. R. Civ. P. 4(m). Given the plain language of the rules, plaintiff's argument is without merit and her claims against

Smigielski should, therefore, be dismissed without prejudice pursuant to Fed. R. Civ. Pro. 12(b)(5).[5]

### C. Count I (Conspiracy)

As noted above, in Count I (Conspiracy), plaintiff alleges that General American Corporation as a closing agent, conspired with Grayling to obtain a loan from Centex despite the fact that Grayling had not provided any documentation deeming him the sole owner of the property in question.  (Complaint, ¶ 6)  Plaintiff also alleges that defendant American Pioneer harmed plaintiff "by not performing due diligence in their title search and conspiring with defendants Centex and [Grayling] to issue title insurance on Plaintiff's property irrespective of the fact that there was clearly a cloud on the title."  (Complaint, ¶ 12)

#### 1. Centex

In its motion for summary judgment, Centex argues that there is no evidence of any conspiracy and, therefore, it is entitled to summary judgment (D/E #36, pp. 8-9).  However, while Centex cites to an affidavit by Charlip describing the actions he took and notes the motive of Nationstar in foreclosing, it fails to attach any such affidavit from Charlip or any evidence discussing Nationstar's motive.  As discussed above, in making a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and the party opposing the motion must only come forward with specific facts

---

[5]Plaintiff made the same inadequate arguments regarding service in her response to this Court's order to show cause why Grayling should not be dismissed for failure to effect timely service of process (D/E #27).  Given the lack of merit in that argument, Grayling should also be dismissed from this action.

showing that there is a genuine issue for trial where the moving party has carried that initial

burden. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348. In this case, by failing to provide any

evidence supporting its argument regarding plaintiff's conspiracy claim, Centex has failed to

meet its initial burden of demonstrating the absence of a genuine issue of material fact and its

motion for summary judgment on that claim must be denied.[6]

**2. American Pioneer**

As part of Count I, plaintiff alleges that American Pioneer harmed plaintiff "by not

performing due diligence in their title search and conspiring with defendants Centex and

[Grayling] to issue title insurance on Plaintiff's property irrespective of the fact that there was

clearly a cloud on the title." (Complaint, ¶ 12) That claim against American Pioneer should be

dismissed, however, because a title insurer is not liable to third parties such as plaintiff for

negligence. <u>See</u> <u>Mickam v. Joseph Louis Palace Trust</u>, 849 F.Supp. 516, 520 n. 4 (E.D. Mich.

1993) (Edmunds, J.)[7] citing <u>Kirkland v. American Title Ins. Co.</u>, 692 F.Supp. 153 (E.D. N.Y.

---

[6]Plaintiff lists her conspiracy claim as a separate count, but its validity depends on the other claims. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means." <u>Advocacy Org. v. Auto Club Ins. Ass'n.</u>, 257 Mich.App 365, 384 (2003). It is necessary to prove a separate, actionable tort to maintain a civil conspiracy claim. <u>Advocacy Org.</u>, 257 Mich.App. at 384. <u>See</u> <u>also</u> <u>Early Detection Center, PC v. New York Life Ins. Co.</u>, 157 Mich.App. 618, 632 (1986) ("a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort."). As expected, the majority of plaintiff's conspiracy allegations are repeated in the later counts and plaintiff's civil conspiracy claim against Centex may only be maintained if one of plaintiff's later claims is actionable.

[7]This Court would note that, while the issue of whether a title insurer can be liable to third parties such as plaintiff for negligence was discussed in <u>Mickam</u>, it was not necessary to that decision. <u>Mickam</u>, 849 F.Supp. at 520 n. 4. However, that case's reasoning applies here.

1988) (title insurer only liable to one with whom it has privity of contract); <u>Ortego v. First American Title Ins. Co.</u>, 569 So.2d 101 (La. App. 1990) (title insurance policy issued to mortgagee conferred no benefits on mortgagor; mortgagor could have purchased owner's policy, but did not); <u>Hooper v. Commonwealth Land Title Ins. Co.</u>, 285 Pa. Super. 265, 427 A.2d 215 (1981) (title insurer only liable to insured, not third parties).  Given American Pioneer's lack of duty to plaintiff, plaintiff has failed to state a claim upon which relief can be granted and the negligence claim against American Pioneer should be dismissed.

### D. Count II (Fraud)

In Count II (Fraud), plaintiff alleges that defendants "Carter, Centex, [American] Pioneer and [General American] conspired to commit Fraud when a loan on the property that clearly had a defective title was issued, coupled with the fact that they could not and had no intention of recording the mortgage with the Wayne County Register of Deeds due to such fraud." (Complaint, ¶ 16)  Plaintiff also alleges in Count II that Centex, Nationstar, Charlip and Smigielski "attempted to provide misleading and deceptive documents to harass plaintiff by attaching to the complaint filed in Third Circuit Court a copy of the mortgage with the Liber Number printed on it to make it appear as if the document had been filed with the register of deeds."  (Complaint, ¶ 20)

Pursuant to Fed. R. Civ. P. 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading

responsive to the specific allegations of fraud. <u>Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n</u>, 176 F.3d 315, 322 (6th Cir. 1999).[8] The Sixth Circuit reads rule 9(b)'s requirement "liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." <u>Coffey v. Foamex L.P.</u>, 2 F.3d 157, 161-62 (6th Cir.1993) (internal quotation marks and citation omitted). <u>See</u> <u>also</u> <u>Yuhasz v. Brush Wellman, Inc.</u>, 341 F.3d 559, 563 (6th Cir. 2003). In <u>Yuhasz</u>, for example, the plaintiff failed to allege a claim with sufficient particularity as required by Rule 9(b) because it contained no particularized allegations of wrongdoing and the failure to identify specific parties, contracts, or fraudulent acts requires dismissal. <u>Yuhasz</u>, 341 F.3d at 563-564.

     The liberal reading of Fed. R. Civ. P. stems from the influence of Fed. R. Civ. P. 8, which only requires a short and plain statement of the claim, and which calls for simple, concise, and direct allegations. <u>Advocacy Organization for Patients and Providers</u>, 176 F.3d at 322. However, even with that liberal reading, "allegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." <u>Coffey</u>, 2 F.3d at 162 (internal quotation marks and citation

---

     [8]For example, "[i]n the context of securities litigation it has generally been held that Rule 9(b) serves three purposes: 1) it ensures that allegations are specific enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; 2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs-a 9(b) claimant must know what his claim is when he files; and 3) it seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill." <u>Vennittilli v. Primerica, Inc.</u>, 943 F.Supp. 793, 798 (E.D. Mich. 1996) (Gilmore, J.), quoting <u>Benoay v. Decker</u>, 517 F.Supp. 490 (E.D. Mich. 1981), aff'd 735 F.2d 1363 (6th Cir. 1984).

omitted).  Moreover, multiple defendants must be distinguished, and if they are not, the

complaint is inadequate.  <u>Vennittilli v. Primerica, Inc.</u>, 943 F.Supp. 793, 798  (E.D. Mich.,1996)

(Gilmore, J.), citing <u>Benoay v. Decker</u>, 517 F.Supp. 490, 493 (E.D. Mich.1981), aff'd 735 F.2d

1363 (6th Cir.1984) (Gilmore, J.).  In <u>Benoay</u>, the court stated:

> Each individual must be apprised separately of the specific acts of
> which he is accused, especially in a case involving multiple
> defendants. The complaint, therefore, may not rely upon blanket
> references to acts or omissions by all of the 'defendants,' for each
> defendant named in the complaint is entitled to be apprised of the
> circumstances surrounding the fraudulent conduct with which he
> individually stands charged. [<u>Benoay</u>, 517 F.Supp. at 493 (citations
> omitted).]

In this case, plaintiff has failed to allege her fraud claim with particularity and it should

be dismissed for failure to state a claim upon which relief can be granted.  As discussed above,

the actions of and claims against the different defendants must be distinguished.  <u>See</u> .

<u>Vennittilli</u>,  943 F.Supp. at 798; <u>Benoay</u>, 517 F.Supp. at 493.  In this case, plaintiff alleges fraud

by Carter, Centex, American Pioneer, General American, and Smigielski.  However, while the

alleged fraudulent documents are sufficiently described, plaintiff simply groups all of the

defendants together and alleges that they conspired to commit fraud.  By doing so, plaintiff

impermissibly relies upon blanket references to acts or omissions by all of the defendants and no

defendant named in the complaint is apprised of the circumstances surrounding the fraudulent

conduct with which he or it individually stands charged.  Consequently, plaintiff has failed to

allege her fraud claim with particularity as required by Fed. R. Civ. P. 9(b) and her fraud claims

against Centex, Nationstar, Charlip, Smigielski and American Pioneer in Count II should be

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**E. Count III (Extortion)**

In Count III (Extortion), plaintiff alleges that Nationstar, Centex, Yoho, Trott & Trott, Charlip and Smigielski "conspired to extort money from Plaintiff by filing false, fraudulent, and misleading documents in an attempt to force Plaintiff to pay for a debt secured by an invalid mortgage or to lose her home, when in fact the debt had been paid." (Complaint, ¶ 22).

**1. Nationstar, Centex, Yoho, Trott & Trott and Charlip**

In their respective motions, Nationstar, Centex, Yoho, Trott & Trott and Charlip argue that no private cause of action for extortion exists. However, the Michigan Court of Appeals has ruled, on the basis of Michigan Supreme Court decisions, that Michigan law recognizes a private cause of action for extortion or threats intending extortion. Jersevic v. Kuhl, No. 238808, 2003 WL 1558207, 1 (Mich. App. March 25, 2003) (per curiam). Specifically, the Michigan Supreme Court has indicated that a party may recover money that was extorted and that, where there are aggravating circumstances, a party may also recover damages in excess of the money extorted. Marlatte v. Weickgenant, 147 Mich. 266, 275; 110 NW 1061 (1907). Additionally, the Michigan Supreme Court has opined that "unlawful and malicious threats may by reason of their intended results become actionable." Edwards v. Grisham, 339 Mich. 531, 535; 64 NW2d 715 (1954). The Edwards Court explained that a party may recover where the "thing threatened" is unlawful and "the making of a threat" is also unlawful. Edwards, 339 Mich. at 534. Because extortion is illegal under Michigan law, M.C.L. § 750.213[9], it follows that the threats were

---

[9]Pursuant to M.C.L. 750.213: "Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person

-22-

unlawful and actionable.  <u>Jersevic</u>, 2003 WL 1558207 at 1, citing <u>Edwards</u>, 339 Mich. at 534-535.

Therefore, the argument relating to the existence of the extortion private cause of action has no merit.  Plaintiff's extortion claim against Nationstar, Centex, Yoho, Trott & Trott and Charlip may therefore proceed.

**2. Smigielski**

In his motion to dismiss, Smigielski first argues that plaintiff has neither alleged the proper elements of extortion nor established a cause of action for extortion.  *Pro se* plaintiffs, such as the plaintiff in this case, enjoy the benefit of a liberal construction of their pleadings and filings.  <u>Boswell v. Mayer</u>, 169 F.3d 384, 387 (6th Cir. 1999).  According to Smigielski, under Michigan law, extortion clearly requires an oral or written malicious threat to accuse another of a crime or offense with intent to extort money and that plaintiff did not allege such a threat in this case.  However, plaintiff did allege that Smigielski, along with the other defendants, attempted to extort money from Plaintiff by filing false, fraudulent, and misleading documents threatening to take plaintiff's home and, as noted above, extortion includes any threat of injury to person or property.  M.C.L. 750.213.  Given plaintiff's allegations, the scope of extortion under Michigan

---

or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars."

law and the liberal reading afforded *pro se* pleadings, plaintiff has stated a claim of extortion

against Smigielski.

Smigielski also argues that:

> Contrary to Plaintiff's assertions, Defendant Smigielski merely
> helped to file the quiet title lawsuit that precipitated the pending
> Wayne County Case. Defendant Smigielski never sought any
> monies from Plaintiff, never threatened Plaintiff and never filed
> "false" documents.  Plaintiff's claims are completely without merit
> and must be dismissed. [D/E #34, p. 10.]

However, as noted above, when deciding a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6), the reviewing court must accept all well-pled factual allegations as true.  Harbin-Bey v.

Rutter, 420 F.3d 571, 575 (6th Cir. 2005).  Smigielski should not be granted dismissal merely

because he alleges that plaintiff's claims are false and without merit.

### F. Count IV (Embezzlement)

In Count IV (Embezzlement), plaintiff alleges that "Defendant Centex has embezzled

money received from the title insurance policy issued by [American] Pioneer by failing to make

a ledger entry indicating the debt was extinguished."  (Complaint, ¶ 25).  In support of the

embezzlement, plaintiff cited to 18 U.S.C. § 1005.[10]  (Complaint, ¶ 25)

---

[10]18 U.S.C. § 1005 provides "Whoever, being an officer, director, agent or employee of
any Federal Reserve bank, member bank, depository institution holding company, national bank,
insured bank, branch or agency of a foreign bank, or organization operating under section 25 or
section 25(a) of the Federal Reserve Act, without authority from the directors of such bank,
branch, agency, or organization or company, issues or puts in circulation any notes of such bank,
branch, agency, or organization or company; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of
deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or
mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank, company, branch,

Plaintiff possesses no private right of action against Centex for embezzlement and the claim should be dismissed pursuant to Fed. E. Civ. P. 12(b)(6). 18 U.S.C. § 1005 involves a criminal offenses and, thus, a private cause of action may not be brought for the alleged violations of the statute. Although the provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages, where there is a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone, the Sixth Circuit will not infer a private cause of action. Marx v. Centran Corp., 747 F.2d 1536, 1549 (6th Cir. 1984).

### G. Count V (Fair Debt Collection Practices)

In Count V (Fair Debt Collection Practices), plaintiff alleges that Nationstar, Centex, Yoho, and Trott & Trott "have violated The Fair Debt Collection Practice (sic) by presenting false or misleading representations as to the validity of the debt when they conspired to file a fictitious Claim of Interest recorded at the Wayne County Register of Deeds." (Complaint, ¶ 27) Plaintiff further alleges that "the Claim of Interest was recorded exclusively for the benefit of embezzling and extorting additional monies from Plaintiff with full knowledge that not only was

---

agency, or organization with intent to injure or defraud such bank, company, branch, agency, or organization, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, company, branch, agency, or organization, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, company, branch, agency, or organization, or the Board of Governors of the Federal Reserve System; or

Whoever with intent to defraud the United States or any agency thereof, or any financial institution referred to in this section, participates or shares in or receives (directly or indirectly) any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such financial institution--

Shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

the mortgage invalid but that the invalid mortgage between Defendants [Grayling] and Centx had been satisfied through the title insurance policy proceeds." (Complaint, ¶ 33).

**1. Collections Action/Monies Demanded**

Nationstar and Centex argue that because the state court action against plaintiff only requested equitable relief, it was not a collections action and the FDCPA does not apply (D/E #36, p. 9). Similarly, Yoho and Trott & Trott argue that there was no FDCPA violations because no monies were demanded of plaintiff (D/E #14, p. 6). Defendants provide no argument or legal citations in support for those assertions.

Even if the state court action was not a collections action itself, it could still constitute a violation of the FDCPA, 15 U.S.C. §§ 1692 *et seq.*, if it was filed in connection with the collection of a debt. For example, 15 U.S.C. § 1692d provides: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." "[W]hether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, .... Congress has indicated its desire for the courts to structure the confines of § 1692d." Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 330-331 (6th Cir. 2006) quoting Jeter v. Credit Bureau, 760 F.2d 1168, 1179 (11th Cir.1985). Similarly, 15 U.S.C. § 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Examples of such acts include the false representation of the character, amount, or legal status of any debt, 15 U.S.C. § 1692(2)(A), the representation or implication that nonpayment of any debt will result in the sale of any property of any person unless such action is lawful and the debt collector or creditor intends to take such action, 15 U.S.C. § 1692(4), the threat to take any

action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692(5), and

the use of any false representation or deceptive means to collect or attempt to collect any debt or

to obtain information concerning a consumer, 15 U.S.C. § 1692(10).  To determine "whether a

debt collector's practice is deceptive within the meaning of the [FDCPA], courts apply an

objective test based on the understanding of the 'least sophisticated consumer.'"  Harvey,  453

F.3d at 331 quoting Lewis v. ACB Bus. Servs., 135 F.3d 389, 400 (6th Cir. 1998).

      Moreover, with respect to defendants Yoho and Trott & Trott, the United States Supreme

Court has held that the FDCPA applies to the litigating activities of lawyers.  Heintz v. Jenkins,

514 U.S. 291, 294-295, 115 S.Ct. 1489 (1995).  As the United States Supreme Court stated, "we

would not find the result so absurd as to warrant implying an exemption for litigating lawyers.

In any event, the assumption would seem unnecessary, for we do not see how the fact that a

lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an "action

that cannot legally be taken."  Heintz,  514 U.S. at 295-296.

      As discussed above, *pro se* plaintiffs, such as the plaintiff in this case, enjoy the benefit

of a liberal construction of their pleadings and filings.  Boswell, 169 F.3d 387.  In this case,

plaintiff clearly alleges that the fraudulent state court action was filed in an attempt to force

plaintiff to pay a debt she did not owe in order to save her house.  Viewing plaintiff's complaint

liberally, plaintiff could be seen as bringing an action pursuant to 15 U.S.C. § 1692d by alleging

that the filing of an unlawful and fraudulent foreclosure action in an attempt to force plaintiff to

pay a debt she did not owe constituted conduct whose natural consequence was to harass or

abuse plaintiff in connection with collection of the debt defendants alleged plaintiff owed.

Likewise, viewing plaintiff's complaint liberally, plaintiff could also be seen as bringing an

action pursuant to 15 U.S.C. § 1692e by alleging that the filing of a foreclosure action based on fraudulent documents in an attempt to force plaintiff to pay a debt she did not owe constituted the use of false, deceptive and misleading representation in connection with the collection of any debt.

**2. Debt Collectors or Creditors**

While defendants' argument that plaintiff failed to state a claim because the state court action was not a collections action is incorrect, this Court could consider dismissing plaintiff's FDCPA claims because they are frivolous given that Nationstar and Centex appear to be the creditors of the alleged debt and plaintiff failed to allege that any of the defendants were debt collectors. Where a plaintiff is proceeding *in forma pauperis*, as plaintiff is in this case (D/E #3), a complaint that is frivolous is subject to *sua sponte* dismissal. 28 U.S.C. § 1915(e)(2)(B). A case is frivolous if it lacks an arguable basis either in law or in fact. See Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The FDCPA provides that "[i]t is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. In pursuit of that purpose, the FDCPA provides that "any debt collector" who fails to comply with its provisions is subject to civil liability. 15 U.S.C. § 1692k(a).

The term "debt collector" in the FDCPA means:

> any person who uses any instrumentality of interstate commerce or
> the mails in any business the principal purpose of which is the

collection of any debts[11], or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. [15 U.S.C. § 1692a(6).]

However, "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). "The term 'creditor' means "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

Furthermore, only a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts. Heintz, 514 U.S. at 294-295. To show that attorney or law firm 'regularly collects debts' for purposes of [FDCPA], "a plaintiff must show that attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice. Schroyer v. Frankel, 197 F.3d 1170, 1176-1177 (6th Cir. 1999) (finding that consumers failed to prove that creditor's law firm and attorney

---

[11]The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

employed by firm "regularly collected debts" so as to constitute "debt collectors" under FDCPA, where district court found that only two percent of law firm's overall practices consisted of debt collection cases, that firm did not employ individuals full-time for the purpose of collecting debts, that only 7.4%, 29 of 389 cases annually, of attorney's overall practice consisted of debt collection cases, and that he represented debtors in the majority of his debt collection cases).

Given the definitions found in the FDCPA and plaintiff's failure to allege in her complaint that defendants were debt collectors, it appears that Nationstar and Centex are creditors rather than debt collectors. Similarly, plaintiff fails to allege that Yoho and Trott & Trott are debt collectors or that they collect debts as a matter of course for some or all of their clients, or that collecting debts is a substantial part of their general law practice. As discussed above, the FDCPA only provides that "any debt collector" who fails to comply with its provisions is subject to civil liability, 15 U.S.C. § 1692k(a), and if defendants are not debt collectors the claims against them should be dismissed. Nevertheless, Nationstar and Centex did not make the argument that they are only creditors of the debt, their status regarding the debt remains unclear, and the Court should not dismiss the FDCPA claims against Nationstar and Centex *sua sponte*. Likewise, Yoho and Trott & Trott did not argue they are not debt collectors as that term is defined in the FDCPA, it is not clear if they are debt collectors or not, and the Court should not dismiss the FDCPA claims against Yoho and Trott & Trott *sua sponte.*

### H. Count VI (Mail Fraud, Fraud and Swindles)

In Count VI (Mail Fraud, Fraud and Swindles), plaintiff alleges that Centex, Nationstar, Charlip and Smigielski "have attempted to fraud and swindle Plaintiff by filing a frivolous, deceptive and false complaint with the court." (Complaint, ¶ 38) In support of that claim,

plaintiff cites to 18 U.S.C. §§ 1341, 1346.  Plaintiff also alleges that Centex, Nationstar, Charlip

and Smigielski have "via the United States Postal Service, sent a false, misleading deceptive

document for the sole purpose of devising a scheme which would deprive Plaintiff, through a

fictitious claim against her, of her right to live in the martial property that she was awarded in

her divorce judgment from Defendant [Grayling]."  (Complaint, ¶ 39)  In support of that claim,

plaintiff cites to 18 U.S.C. §§ 1341[12], 1349[13].

However, the Sixth Circuit has found that no private cause of action lies for alleged

violations of federal criminal mail and wire fraud statutes.  <u>Morganroth & Morganroth v.</u>

<u>DeLorean</u>, 123 F.3d 374, 386 (6th Cir. 1997).  Consequently, plaintiff has failed to state a claim

---

[12]18 U.S.C. § 1341 provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

[13]18 U.S.C. § 1349 provides; "Any person who attempts or conspires to commit any offense under [Chapter 63 Mail Fraud] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

upon which relief can be granted in Count VI and her mail fraud claims against Centex,

Nationstar, Charlip and Smigielski  must be dismissed.

## I. Count VII (RICO)

In Count VII (RICO), plaintiff alleges that "Defendants Centex, Nationstar, Yoho, Trott

& Trott, Charlip, Smigielski have violated the RICO laws and have participated in racketeering

by receiving income directly or indirectly through collection of an unlawful debt."  (Complaint, ¶

43)

### 1. Private Cause of Action

Centex, Nationstar and Charlip argue in their motion to dismiss that plaintiff's claim

pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§

1961-1968, is barred because RICO is a criminal statute (D/E #36, p. 6).  However, as plaintiff

correctly notes, RICO clearly provides for civil remedies.  Pursuant to 18 U.S.C. § 1964(c):

> Any person injured in his business or property by reason of a
> violation of section 1962 of this chapter may sue therefor in any
> appropriate United States district court and shall recover threefold
> the damages he sustains and the cost of the suit, including a
> reasonable attorney's fee, except that no person may rely upon any
> conduct that would have been actionable as fraud in the purchase
> or sale of securities to establish a violation of section 1962. The
> exception contained in the preceding sentence does not apply to an
> action against any person that is criminally convicted in
> connection with the fraud, in which case the statute of limitations
> shall start to run on the date on which the conviction becomes
> final.

### 2. Predicate Acts

Yoho, Trott & Trott and Smigielski argue that plaintiff fails to state a RICO claim in

Count VII because she fails to allege any predicate acts (D/E #14, p. 6; D/E #34, p. 10).

"In order to prove a violation of [RICO], the plaintiffs must show 1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000) (citations omitted).

In this case, in addressing plaintiff's RICO claim, defendants appear to ignore all of plaintiff's other claims and the fact that her RICO claim incorporated all the previous paragraphs of her complaint (Complaint, ¶ 42). In those previous paragraphs, for example, plaintiff alleged that defendants committed mail and wire fraud, 18 U.S.C. §§ 1341, 1343 (Count VI), and extortion, M. C. L. § 750.213 (Count III). Mail and wire fraud and extortion are included in the definition of "racketeering activity" in § 1961. See § 1961(1)(A) (listing extortion chargeable under State law); § 1961(1)(B) (listing violations of 18 U.S.C. §§ 1341, 1343). Consequently, plaintiff did allege that defendants engaged in underlying predicate acts and her complaint should not be dismissed on that basis.

**3. Enterprise**

While defendants' arguments that plaintiff's RICO claim should be dismissed because she has no private cause of action or because she failed to allege any predicate acts are incorrect, the court should still dismiss plaintiff's RICO claim *sua sponte* because she fails to allege the existence of any enterprise and, therefore, the RICO claim is frivolous. As mentioned above, where a plaintiff is proceeding *in forma pauperis*, as plaintiff is in this case (D/E #3), a complaint that is frivolous is subject to *sua sponte* dismissal. 28 U.S.C. § 1915(e)(2)(B). A case is frivolous if it lacks an arguable basis either in law or in fact. See Neitzke, 490 U.S. at 325.

As noted above, to be held responsible under RICO, a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself.  See VanDenBroeck , 210 F.3d at 699.  The Supreme Court has defined an "enterprise" under the Act as a "group of persons associated together for a common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).  "An association-in-fact enterprise can be proven by showing 1) that the associated persons formed an ongoing organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it engaged."  VanDenBroeck , 210 F.3d at 699.  Simply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes.  VanDenBroeck , 210 F.3d at 699.  All that is required is some minimal level of organizational structure between the entities involved.  VanDenBroeck , 210 F.3d at 699.  "Most cases interpreting the elements applicable to this statute require evidence of some sort of "chain of command" or other evidence of a hierarchy, even a highly limited one."  VanDenBroeck , 210 F.3d at 699.

In this case, plaintiff has completely failed to allege the existence of any enterprise. Plaintiff repeatedly alleges that defendants conspired together, but she never claims that defendants formed an ongoing organization, functioned as a continuing unit, or that the organization was separate from the pattern of racketeering activity in which it engaged as required by VanDenBroeck , 210 F.3d at 699.  All that is required is some minimal level of organizational structure between the entities involved, VanDenBroeck , 210 F.3d at 699, but plaintiff has failed to allege even that much.  Given that failure to allege one of the elements of a

RICO claim, plaintiff has failed to state a claim upon which relief can be granted and her RICO claim should be dismissed.

### J. Count VIII (Quiet Title)

In Count VIII (Quiet Title), plaintiff alleges that Centex does not have a valid lien against the property, Nationstar is not the assignee of Centex, there is no longer a debt, plaintiff was awarded the property in her divorce, and plaintiff's son, who has an interest in the property, has no objection to plaintiff receiving quiet title. (Complaint, ¶¶ 48-53).

In this case, Centex and Nationstar ask that plaintiff's quiet title action against them be dismissed because it has already been decided in state court. "Well-settled law directs federal courts to 'give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" Young v. Township of Green Oak, 471 F.3d 674, 680 (6th Cir. 2006), quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

Collateral estoppel precludes litigation of one specific issue while the Sixth Circuit has described res judicata[14] as "extinguish[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 650-651 (6th Cir. 2007) quoting Walker v. General Tel. Co., 25 Fed.Appx. 332, 336 (6th Cir. 2001).

---

[14]"The elements of res judicata are that '(1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims.'" Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 650-651 n. 4, quoting Walker, 25 Fed.Appx. at 336.

Consequently, this court should construe defendants' argument as one for collateral estoppel rather than res judicata despite the way defendants frame the issue.

This Court has listed four requirements for the application of collateral estoppel: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. [Hamilton's Bogarts, Inc., 501 F.3d at 650-651, citing NAACP, Detroit Branch v. Detroit Police Officers Ass'n (DPOA), 821 F.2d 328, 330 (6th Cir. 1987).]

Quiet title actions are authorized by a provision of Michigan law that provides that any person who claims any title to, legal or equitable, or right or interest in, any land may sue any other person who claims or might claim an inconsistent interest, regardless of whether the plaintiff or the defendant is in possession of the land. M.C.L. § 600.2932.

In this case, the issue of title between plaintiff and defendants appears to be moot given that defendants are no longer asserting any interest in plaintiff's property. Subsequent to the filing of this action, plaintiff was granted summary disposition in the Michigan state court case on the basis that Nationstar had acknowledged that it had no claim against plaintiff. The state case was dismissed with prejudice as to plaintiff and the court ordered that the Lis Pendens filed by Nationstar be released and forever discharged. (Order Granting Carol Ann Carter's Motion for Summary Disposition, dated February 22, 2008, attached as Exhibit 6 to D/E #36). The Lis Pendens has been released (Release of Claim of Interest, attached as Exhibit 7 to D/E #36;

Release of Notice of Lis Pendens, attached as Exhibit 8 to D/E #36). Therefore, given the outcome of the state court action, plaintiff's quiet title claim is moot.

To the extent plaintiff's claim is not moot, all the elements of collateral estoppel appear to be satisfied and plaintiff's claim is barred by the doctrine, with this case being an odd circumstance where the losing party from an the previous action is seeking to prevent the winning party from re-litigating an issue. The question of title was raised in the state court action and it was necessary to the outcome of that proceeding, as it pertained to plaintiff. On February 22, 2008, a judgment was issued in favor of plaintiff. (Order Granting Carol Ann Carter's Motion for Summary Disposition, dated February 22, 2008, attached as Exhibit 6 to D/E #36). Moreover, plaintiff appeared to have a full and fair opportunity to litigate the issue in the prior proceeding.

## V. Conclusion

For the reasons discussed above, the court recommends that plaintiff should only be allowed to proceed with her conspiracy claim against Centex, her extortion claims against Centex, Nationstar, Charlip, Yoho, and Trott & Trott, and her claims under the FDCPA against Centex, Nationstar, Yoho and Trott & Trott. The Court also recommends that American Pioneer, Smigielski and Grayling be dismissed from this action. As noted above, General American is not part of any of the above motions and the claims against it also remain.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: July 22, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on July 22, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan